IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Charleston Division

Kevin Johnson,                                    Plaintiff,

v.        Case No. 2:25-cv-12580-BHH-MGB

Chadwick Dotson, et al.,                          Defendants.

PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S
JANUARY 13, 2026 REPORT AND RECOMMENDATION

Plaintiff pro se hereby objects to the January 13, 2026
Report and Recommendations of Magistrate Judge Mary Gordon
Baker, as follows:

Plaintiff, a Virginia detainee held in South Carolina, and
proceeding pro se and in forma pauperis, brought this case pursuant to
42 U.S.C. § 1983; the Wiretap Act; the Religious Land Use and
Institutionalized Persons Act; and the Americans With Disabilities Act.
(Dk. # 1) Plaintiff filed a Motion for Temporary Restraining Order
and Preliminary Injunction and Brief in Support (Dks# 8 and 9).
Plaintiff sought such interim relief seeking to enforce his fundamental
rights under several counts under § 1983 including his First
Amendment rights to petition and free speech and press and
protection against retaliation by defendants for exercising his First
Amendment rights; For Eighth and/or Fourteenth Amendment rights
related to excessive use of force in an abusive transport ride,
solitary confinement conditions, denial of outside exercise in
solitary confinement, denied care for serious medical, dental and
mental health needs; obstructed mail and attorney/client
communications; due process violations related to fabricated disciplinary
cases; and equal protection claim related to the denied practice of his
Rastafarian religion; under the RLUIPA he sought interim injunctive
relief for defendants burdening his rights and ability to practice his
Rastafarian religion in growing his hair, smoking tobacco and enjoying an
Ital diet; under the Wiretap Act he sought emergency injunction for
defendants' intercepting and monitoring his confidential legal calls with
an attorney; and under the Americans With Disabilities Act he sought
interim injunctive relief for the South Carolina Department of Corrections'
(SCDC) failing to make reasonable accommodations for his mental
health needs and hand injury that impairs his ability to write.

The Magistrate Judge only considered his First Amendment
retaliation claims and conspicuously overlooked all of his other

constitutional and statutory claims. Said Judge overlooked these claims and his arguments in support of those claims set out in his Brief in support of Temporary Restraining Order and Preliminary Injunction which clearly met ~~all~~ all the standards ~~~~ governing and entitling him to interim injunction. The Magistrate Judge had a duty to decide his requests for relief under those standards. See, e.g. Cohens v State of Virginia, 19 U.S. 264, 404 (1821)(Courts have duty to decide issues brought before them); accord, McCarthy v. Madigan, 503 U.S. 140, 146 (1992).

Furthermore, the success of any one of plaintiff's claims or counts for interim injunctive relief entitled him to prevail on all of his claims and counts. Salomon v Winters, 150 F. 4th 268, 273 n.1 (4th Cir. 2025).

The Magistrate Judge disposed of plaintiff's First Amendment retaliation claim upon only the first of four prongs governing entitlement to temporary restraining order (TRO) and Preliminary Injunction (PI), viz, whether plaintiff had a likelihood of success on the merits. See, Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008), for four prongs test of TRO and PI. In making the determination whether plaintiff had such a likelihood, the Magistrate Judge examined whether plaintiff was engaged in speech that enjoyed First Amendment protection at all. She found the speech that the verified facts of plaintiff's complaint established that defendants were retaliating against and repressing did not enjoy First Amendment protection, because, according to her assessment, it was speech that could incite disruption within the scac. These findings of fact were not consistent with any facts set out in plaintiff's complaint, upon which his First Amendment retaliation claims were based. His actual facts made clear that the speech he was engaged in that defendants repressed and retaliated against were writings that exposed abuses inside prisons and jails that were published by mainstream media on the streets. And that these writings not only informed the public and legislators, but prompted legislative investigations and findings that the abusive conditions that he journalized about were indeed unlawful and confirmed by them. This is certainly not the sort of speech that prompts nor creates the danger of "incitement" inside jails or prisons, which officials may lawfully repress. See, Complaint ¶¶ 2-5, 19-25, etc., for facts showing plaintiff's writings were published outside prisons and jails. Also that it was not just his speech that was the basis of retaliation but also his First Amendment rights to freedom of press and his rights to ~~~~ litigation.

As to his speech and press claims, sister circuits have found that detainees and prisoners enjoy First Amendment rights

to communicate with the media and publish conditions inside jails and prisons through the media, as a constitutionally protected form of seeking redress on a par with seeking court redress. See, e.g., Guajardo v. Estelle, 580 F. 2d 748, 759 (5th Cir. 1978); Taylor v. Sterrett, 532 F. 2d 462, 981- 82 (5th Cir. 1976). Hence, writing for media that exposes unlawful abuses inside jails and prisons by one incarcerated is certainly constitutionally protected speech and press. In fact, courts within this Fourth Circuit have expressly denounced the tendency of Virginia's custodial officials to conceal and hide the conditions within their institutions from public scrutiny and for their "lack of recognition that a prison administration is not a fief unto itself. Coupled with this antiquated notion that a prison unit is not even peripherally a part of the community, is the practice over the years, that has been shown the court in this and in other prison cases, to envelope the system with a massive veil of secrecy." Landman v. Royster, 354 F. Supp. 1292, 1299 (E.D. Va. 1973).

Furthermore, the Supreme Court has held that outside correspondence of this sort is constitutionally protected, enjoying a higher degree of protection than incoming correspondence. See, Procunier v. Martinez, 416 U.S. 396, 413 -19 (1974), and iterated in Thornburgh v. Abbott, 490 U.S. 401, 413 (1989) ("the implications of outgoing correspondence for prison security are of a categorically lesser magnitude than to implications of incoming materials."). Inherent in the Procunier and Thornburgh decisions is that writings mailed and circulated outside of jails and prisons pose little to no danger of impacting security matters inside of jails and prisons, especially where jails and prisons screen and control what published materials, such as plaintiff's published writings, come into their facilities. So, the magistrate judge's assessing plaintiff's writings that were published in reputable outside media as speech that impacted or threatened internal jail or prison security is totally misplaced here. And the incarcerated clearly enjoy First Amendment protections in writing for outside media. Abu Jamal v. Price, 154 F. 3d 128, 134-36 (2d Cir. 1998)( granting PI against rule that interfered with prisoner's writing for publication); Castle v. Clymer, 15 F. Supp. 2d 640, 662-63 (E.D. Pa. 1998) (holding that prisoner's transfer for interview and letters to a newsletter reporter violated the First Amendment even though prisoner's comments were "confrontational and inflammatory").

The Magistrate judge also charged that plaintiff did not show that his transfer and mistreatment were in response to his speech, such as show retaliatory motives. Plaintiff clearly met this

- 3 -

burden. Not only did he present verified facts showing defendants stated that their treatment of plaintiff was motivated by his critical journalism (First Amendment speech and press activities), but, as he demonstrated and explained, his transfer to SCDC from the Virginia Department of Corrections was done in the thick of and to disrupt plaintiff's actively publicizing abusive conditions in the Virginia system, as the Virginia defendants were falsely responding to and denying his media reports in the media, which plaintiff, and other mainstream journalists acting upon his reports, were actively proving to be false denials. Furthermore, state legislators conducted investigations based upon plaintiff's reports and found them credible, during this time. The timing of his transfer and mistreatments and suppression of his writings in correlation with his journalism, satisfied the proximity standard of First Amendment retaliation claims.[1] He was also actively litigating at the time against which the transfer and mistreatments were/are directed. See Cain v. Lane, 857 F. 2d 1139, 1193 n. 6 (7th cir. 1988) ( claim of retaliation substantiated by " a chronology of events from which retaliation may plausibly be inferred."). In this case, the time sequence of plaintiff's journalism and defendants' adverse actions establishes & shows a causal relationship in support of his claim of retaliation. To establish a retaliation claim " an inmate must either produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred". Allen v. Thomas, 388 F. 3d 147, 149 (3rd cir. 2004). Plaintiff produced both direct evidence of motivation and a chronology of events meeting this standard.

    Again, the Magistrate Judge totally overlooked all of plaintiff's other constitutional and statutory counts upon which he sought TRO and PI and set out clear argument in support of. ( See Dk. no. 9).[2]

    In any case where a court denies PI upon one winter factor, review must consider all other factors. Jensen v. Maryland Cannabis Admin., 151 F. 4th 169, 177 ( 4th cir. 2025).

    THEREFORE, for the foregoing reasons the District Judge should overrule the Magistrate Judge's January 13, 2026 Report & Recommendation denying plaintiff a TRO and PI and said District Judge should grant plaintiff's Motion for TRO and PI on his First Amendment retaliation claims and all his further constitutional and statutory counts and claims argued in his Motion and supporting Brief for TRO and PI - see Dks 8 and 9.

Respectfully submitted,

Plaintiff pro se

                                                – 4 –

Reply to: Kevin Johnson, No. 397279
        Perry Correctional Institution
        430 Oaklawn Rd.
        Pelzer, SC 29669

---

1.      See Complaint ¶¶ 2-7, 15-16, 19-25, etc.

2.      Also a detainee held without and unrelated to criminal proceedings is not a "prisoner" within the meaning of nor subject to the Prison Litigation Reform Act. Plaintiff has a motion/petition addressed to his custodial status forthcoming, but is delayed in filing it due to defendants' photocopy policy and his hand injury.